```
                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF KENTUCKY
                  CENTRAL DIVISION at LEXINGTON
```

| | |
|---|---|
| ASHLEY GREEN, | ) |
| Plaintiff, | ) Civil Action No. 5:10-cv-367-JMH |
| v. | ) |
| MARK SANDY, et al., | ) **MEMORANDUM OPINION & ORDER** |
| Defendants. | ) |

                    **       **       **       **       **

This matter is before the Court upon Plaintiff's Motion for Leave to File a First Amended Complaint [DE 39], to which Defendants have filed a Response [DE 41], stating their objections, and which the Court now construes as a Motion to Dismiss. Plaintiff has filed a Reply [DE 45] in further support of her Motion, which the Court construes as a response, objecting to the dismissal of the claims averred in the Tendered Amended Complaint.[1] The Court being adequately advised, these motions are ripe for decision, and the Court has reached the conclusion that Plaintiff's Amended Complaint should be dismissed for the reasons stated below.

**I.  Background**

In the spring of 2005, Plaintiff, Ashley Green, verbally committed to play soccer on Eastern Kentucky University women's

---

[1] Defendants have also filed a Motion to Dismiss and Supplemental Motion to Dismiss [DE 11 and 12], to which Plaintiff has filed a Response in opposition [DE 36]. Defendants have filed a Reply in further support of that Motion [DE 42]. This Motion will be denied as moot in light of the decision to permit amendment of the Complaint.

soccer team. The following year, Plaintiff signed a letter of intent with Eastern Kentucky University ("EKU"), to commence in the fall of the 2007-2008 academic year. The letter of intent signed by Plaintiff included an athletic scholarship of $8,000 financial aid, renewable annually under NCAA rules, as well as the rules of EKU. Plaintiff did enroll as a student at EKU in the fall of 2007 and participated therein as a student athlete, without incident, during the 2007-2008 and 2008-2009 academic years. Then, on or about October 31, 2009, Plaintiff consumed alcohol off campus, in violation of team policy. Plaintiff was sanctioned in the form of a $2,000 reduction from her athletic scholarship, to be effective for the 2010-2011 academic year.

Shortly following the incident, Plaintiff became increasingly concerned with the team's dwindling retention rate, as well as its management. In an effort to alleviate these conditions, Plaintiff met with head coach, Lindsay Basalyga, to express her concerns. However, according to Plaintiff, she was unsuccessful in obtaining a "fair and impartial hearing" with Coach Basalyga at that time. In response, Plaintiff's father, David Green, contacted EKU's Athletic Director, Mark Sandy, on April 2, 2010, to relay his daughter's tribulations with the women's soccer team. In the days after, Plaintiff personally presented Sandy with her complaints and recommendations regarding the women's soccer team. Sandy assured Plaintiff that their discussions were confidential and that he

would investigate the matter and get back to her before the conclusion of the semester.

On April 29, 2010, Sandy notified Plaintiff that the matter was still under investigation. Nonetheless, on May 12, 2010, David Green contacted President of EKU, Charles Douglas Whitlock, regarding the condition of the team and possible NCAA violations. The following day, President Whitlock notified David Green that his Chief of Staff, Virginia Underwood, would investigate the issues raised by the Greens.

On May 26, 2010, Underwood informed Plaintiff that she had been appointed by President Whitlock and would be looking into the issues raised by Plaintiff's father. On that same day, Plaintiff received an email from Coach Basalyga which stated that she would not be allowed to Coach Basalyga's privately owned summer soccer camp. According to Plaintiff, Coach Basalgya told Plaintiff she was banned from the camp "because of the letter the Mr. Green sent to the President of the University about her."

On May 28, 2010, Underwood met with Plaintiff for the first time to discuss her stated complaints with Coach Basalyga and recommendations for the women's soccer team. Over a month later, on June 30, 2010, Underwood contacted Plaintiff to schedule their second meeting and to assure Plaintiff that she would conduct an "objective review, as confidentially as possible, to the extent permitted by law." It was on that same day, June 30, 2010, that

Sandy met with Plaintiff to inform her that she had been dismissed from the women's soccer team and that her scholarship money had been reduced from $8,000 to $6,000 for the 2010-2011 academic year.

At this meeting, Plaintiff asked Sandy if he would provide her a written statement detailing the reasons for her dismissal. According to Plaintiff, Sandy stated that he was not required to provide such a statement, but that Plaintiff would be contacted by the President's office with respect to the referenced matters.

Then, on July 12, 2010, Plaintiff wrote to Underwood inquiring about her status on the women's soccer team, explaining that this was the action Sandy advised her to take. Two days later, Underwood responded to Plaintiff via email stating that her investigation did not reveal that Coach Basalyga had engaged in any improper conduct. She told Plaintiff that she had submitted these findings to Sandy for his review and decision. Neither Underwood nor Sandy offered an explanation for Plaintiff's dismissal from the women's soccer team.

Plaintiff sent a letter to the Department of Financial Aid alleging that she had been treated unfairly because Coach Basalyga did not offer her an opportunity to make up the $2,000 in reduced aid. However, at a hearing on August 4, 2010, the Financial Aid Department amended its original decision and held that Plaintiff's financial aid would only be reduced by $1,000 for the 2010-2011 academic year. Although Plaintiff's athletic aid would be restored

to $7,000, almost the full and original amount, she was not permitted to participate on the women's soccer team the coming year.

**II. PLAINTIFF'S MOTION TO AMEND**

In her proposed Amended Complaint, Plaintiff seeks to recover for violations of her First and Fourteenth Amendment rights under 42 U.S.C. § 1983 from Defendants Basalyga, Sandy, and Underwood in their official and individual capacities, as well as from Defendant Eastern Kentucky University. While Fed. R. Civ. P. 15(a)(2) provides that leave to amend shall be freely granted "when justice so requires," this Court must consider whether there has been (1) undue delay in filing, (2) bad faith by the moving party, (3) lack of notice to the opposing party, (4) failure to cure deficiencies in previous claims, (5) undue prejudice to the opposing party, and (6) futility of the proposed amendments such that they could not survive a motion to dismiss. *Wade v. Knoxville Utilities Board*, 259 F.3d 452, 458-59 (6th Cir. 2001). In this instance, the Court is of the opinion that motion could be denied because the proposed amendments are futile, i.e., they cannot survive a motion to dismiss. Her original complaint, however, verges on incomprehensible. For this reason, the Court has determined that it will permit the amendment because, in this instance, justice is better served by dealing with Plaintiff's claims as set forth in her Amended Complaint.

**III. Motion to Dismiss**

Defendants' Response [DE 41] to Plaintiff's Motion for Leave to File a First Amended Complaint contains a thorough analysis of all of the reasons why Plaintiff's First Amended Complaint should be dismissed, particularly when read together with their earlier Motion to Dismiss the original Complaint. Plaintiff has had an opportunity to respond to those arguments in her Reply thereto. Accordingly, the Court will construe Defendant's Response [DE 41] as a Motion to Dismiss Plaintiff's First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. For the reasons stated below, that Motion will be granted.

**A. Standard of Review**

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the sufficiency of a plaintiff's complaint. The Court views the complaint in the light most favorable to the plaintiff and "must accept as true 'well-pleaded facts' set forth in the complaint." *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 680 (6th Cir. 2004) (quoting *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)). "[T]he Court may consider, without converting Defendants' motion to dismiss into a motion for summary judgment, the facts alleged in the . . . Complaint, any documents attached or incorporated in . . . Amended Complaint, and public documents of which the Court can take judicial notice." *U.S. ex rel. Dingle v. BioPort Corp.* 270 F.Supp.2d 968, 971-72 (W.D.Mich. 2003), citing

*Jackson v. City of Columbus,* 194 F.3d 737, 745 (6th Cir.1999), *overruled in part on other grounds, Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 508-14 (2002); *Yeary v. Goodwill Indus.-Knoxville, Inc.,* 107 F.3d 443, 445 (6th Cir.1997); *Armengau v. Cline,* 7 Fed.Appx. 336, 344, 345 (6th Cir.2001). With respect to the averments set forth in Plaintiffs' First Amended Complaint, set forth above, the Court accepts Plaintiffs' averments as true for the purposes of evaluating the Motion to Dismiss.

"A complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." *Weiner v. Klais & Co.,* 108 F.3d 86, 88 (6th Cir.1997). If it appears beyond doubt that the plaintiff's complaint does not state facts sufficient to "state a claim that is plausible on its face," then the claims must be dismissed. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 541-42 (6th Cir. 2007); *Our Lady of Bellefonte Hospital, Inc. v. Tri-State Physicians Network, Inc.*, No. 06-141-HRW, 2007 WL 2903231, *2 (E.D. Ky. Sept. 27, 2007). The factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead "sufficient factual matter" to render the legal claim plausible, i.e., more than merely possible. *Ashcroft v. Iqbal,* --- U.S. ----, 129 S.Ct. 1937, 1949-50, 173 L.Ed.2d 868 (2009).

**B. Claims Against EKU and Other Defendants in Official Capacities**

With respect to Plaintiff's federal claims against EKU and the individual defendants in their official capacities, the Eleventh Amendment to the Constitution generally bars suits brought in federal court against a state and its agencies. *Grinter v. Knight*, 532 F.3d 567, 572 (6th Cir. 2008). Plaintiff's claims against EKU and the individual Defendants in their official capacities are, thus, barred for they are all effectively claims against EKU, which is an agency of the Commonwealth of Kentucky. *Id.* (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)); *Robinson v. Bd. of Regents of EKU*, 475 F.2d 707, 711 (6th Cir. 1973)(holding that EKU Board of Regents is a state agency of Kentucky); *see also Hutsell v. Sayre*, 5 F.3d 996, 999–1000 (6th Cir. 1993) (explaining why the University of Kentucky was an "arm of the state under state law"); *Weathers v. Ky. State Univ.*, No. 3:09-CV-00004, 2009 WL 1683711, at *3 (E.D. Ky. June 16, 2009) (explaining that lawsuit against university officials including the president was barred by the Eleventh Amendment).

Plaintiff argues, however, that she can maintain a claim for breach of contract under Kentucy law against EKU premised on the University's student athlete handbook. State sovereign immunity doctrine bars suit with respect to this claim, as well. *See* Ky. Const. § 231; *Withers v. Comm.*, 939 S.W.2d 340, 342-43 (Ky. 1997);

*Yanero v. Davis*, 65 S.W.3d 510, 517-18 (Ky. 2001); *Univ. of Louisville v. Martin*, 574 S.W.2d 676, 678 (Ky. Ct. Ap. 1978). This sovereign immunity can be waived only with specific and express waiver from the Kentucky General Assembly. *Comm. v. Whitworth*, 74 S.W.3d 695, 699 (Ky. 2002); *Martin*, 574 S.W.2d at 677. Indeed, EKU's immunity cannot be waived in this Court by any action of its own volition, such as the creation or adoption of any written document that may purport or appear to bind EKU, its employees or both. *See Martin*, 574 S.W.2d at 678-79. Even assuming that any such contract or agreement between EKU and Plaintiff existed and that any waiver was permitted, it would be of a limited nature, and Plaintiff would need to proceed on any written contract as set forth in KRS § 45A.245(1) in a suit against the Commonwealth in Franklin Circuit Court.

That said, the Court is not immediately persuaded that the handbook could ever be understood as a contract. It is a unilateral policy manual which states that EKU "reserves the right to alter, amend or modify this handbook at any time without prior notice." As with handbooks in the employment context, "[i]n order to constitute a contract,. . . the handbook must contain specific language showing [EKU's] intent to be bound by the handbook's provisions." *See Brown v. City of Niota*, 214 F.3d 718, 721 (6th Cir. 2000); *Noel v. Elk Brand Mfg. Co.*, 53 S.W.3d 95, 98-99 (Ky. Ct. App. 2000). In any event, Plaintiff's claim for breach of

contract is barred before this Court by virtue of the doctrine of state sovereign immunity.

**C.    Claims Against Defendants in Their Individual Capacities**

As for her claims against Defendants Basalyga, Sandy, and Underwood, in their individual capacities, her claims are barred by the doctrine of qualified immunity.  The federal doctrine of qualified immunity protects the defendants sued in their individual capacities from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Pearson v. Callahan*, 555 U.S. 223; 129 S.Ct. 808, 815 (2009). The protection of qualified immunity applies regardless of whether the government defendant's error is a mistake of law, a mistake of fact or a mixture of the two. *See id*.  Importantly, qualified immunity is immunity from suit rather than a mere defense to liability.  *Id*.  In evaluating the application of qualified immunity to Green's federal due process claim, two questions must be addressed: (a) whether the facts alleged by Green make out a violation of a constitutional right; and (b) if so, whether that right was clearly established at the time of the defendants. alleged misconduct. *See id*. at 815-818.  As explained below, Green has failed to identify a violation of any federal constitutional right, and her federal claims are barred as a matter of law because the defendants, in their individual capacities, are due qualified

immunity.

### 1. First Amendment Claim

Plaintiff claims that EKU officials removed her from the women's soccer team in retaliation for exercising her First Amendment right to free speech when she expressed to them her concerns regarding Basalyga's handling of internal team matters, including player attendance, retention, and study requirements and recommendations on how to improve the soccer program. She has not, however, established that they have violated any constitutional right, and Defendants, in their individual capacities, are due qualified immunity.

First, "[i]t is well-established that students do not have a general constitutional right to participate in extracurricular athletics." *Lowery v. Euverard*, 497 F.3d 584, 588 (6th Cir. 2007) (citing *Brentwood Academy v. Tennessee Secondary Sch. Athletic Ass'n*, 180 F.3d 758, 763 (6th Cir. 1999), *rev'd on other grounds*, 531 U.S. 288 (2001); *Alerding v. Ohio High School Athletic Ass'n.*, 779 F.2d 315 (6th Cir. 1985); *Angstadt v. Midd-West Sch. Dist.*, 377 F.3d 338 (3d Cir. 2004); *Niles v. University Interscholastic League*, 715 F.2d 1027 (5th Cir. 1983)). Further, "student athletes are subject to more restrictions than the student body at large." *Id.* (citing *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 657 (1995)). The reason for this is simple:

> Unlike the classroom teacher whose primary role is to guide students through the

> discussion and debate of various viewpoints in a particular discipline, [the role of a coach] is to train his student athletes how to win on the court. The plays and strategies are seldom up for debate. Execution of the coach's will is paramount.

*Dambrot v. Central Mich. Univ.*, 55 F.3d 1177, 1190 (6th Cir. 1995). *Lowery* further recognized that a student-athlete's expression of dissatisfaction with her team or coach causes great harm to team unity and therefore constitutes a disruption and disturbance which school officials have a right to prevent. *Lowery*, 497 F.3d at 593, 596.

Schools and coaches are not obligated to wait until a student-athlete's complaints actually disrupt a team before taking action, nor are they required to actually demonstrate it was certain the complaints would create disruption. *Id*. at 593. Rather, school and coaches must show it was reasonable for them to forecast that the complaints at issue would disrupt the team. *Id*. Thus, questions of whether disruption actually occurred or whether the school could actually prove disruption are not questions that prevent dismissal as a matter of law. *See id*. at 592-93. As taught in *Lowery*, where a student-athlete's regular education has not been impeded, as here, she is free to "continue [her] campaign [against the coach]," but what she is not free to do is continue to play the sport for that coach while actively working to undermine the coach's authority. *Id*. at 600 (emphasis in original). Here,

EKU administrators and Coach Basalyga could reasonably have forecast that Plaintiff's criticisms of Basalyga's methods and decisions would disrupt the team, and they were well within their rights to dismiss Plaintiff from the team.

In the absence of any violation of Plaintiff's constitutional rights, her claim against the defendants in their individual capacities is barred by the doctrine of qualified immunity.

### 2. Fourteenth Amendment Claim

Further, Plaintiff claims that her fourteenth amendment right to due process was violated as she was dismissed in retaliation for following University procedures to pursue her concerns regarding the women's soccer team. There is, however, no federal constitutional right to use those institutional grievance procedures. *See Irvin v. Fluery*, 2007 WL 5328577 (W.D. Mich. 2007)). Accordingly, in the absence of any violation of Plaintiff's constitutional rights, her claim against the defendants in their individual capacities is barred by the doctrine of qualified immunity.

### IV. CONCLUSION

For the reasons stated above, Plaintiff's Motion to Amend her Complaint will be granted, but her claims will be dismissed.

Accordingly, **IT IS ORDERED**:

(1) that Plaintiff's Motion for Leave to File First Amended Complaint [DE 39] is **GRANTED**;

(2) that the Clerk shall **FILE** Plaintiff's tendered First Amended Complaint [DE 35] in the record of this matter;

(3) that Defendants' Motion to Dismiss and Supplemental Motion to Dismiss [DE 11 and 12] are **DENIED AS MOOT**;

(4) that Defendants' Response [DE 41] to Plaintiff's Motion for Leave to File a First Amended Complaint is **CONSTRUED** as a Motion to Dismiss the First Amended Complaint and **GRANTED**.

This the 3rd day of October, 2011.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge